UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| NICHOLE C. CARTER, | CASE NO. 2:24-cv-01177-DGE |
| Plaintiff, | ORDER REMANDING FOR |
| v. | AWARD OF BENEFITS |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## I    INTRODUCTION

Plaintiff Nicole Harter seeks review of the denial of her applications by Defendant, the Commissioner of Social Security, for Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (Dkt. No. 7 at 1.) For the foregoing reasons, the case is REVERSED and REMANDED for the award of benefits.

## II    FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Plaintiff is a thirty-six-year-old woman with a complex disability history.  Plaintiff was diagnosed with Bipolar II Disorder as an undergraduate in college, but responded positively to medication and went on to pursue a successful career as a neonatal intensive care unit (NICU) nurse for approximately eight years.  (Dkt. Nos. 6-6 at 161; 6-6 at 162; 6-8 at 140; 6-8 at 359.)  Plaintiff is also diagnosed with generalized anxiety disorder with panic.  (Dkt. No. 6-8 at 361.)  In June of 2019, Plaintiff's health rapidly began to deteriorate; she immediately sought medical attention, reporting extreme fatigue, weakness, muscle pain, shortness of breath, and headaches to multiple physicians.  (Dkt. No. 6-7 at 4, 78, 92, 110, 137, 352, 363, 370, 373, 376.)  Over the summer of 2019, Plaintiff saw numerous medical specialists and continued to consistently report a series of symptoms: extreme fatigue, weakness, brain fog, headaches and lightheadedness, chronic pain, incontinence, and muscle weakness and stiffness.  (*See, e.g.,* Dkt. No. 6-7 at 4, 363, 370, 373, 376.)  She received normal results on medical exams, including an MRI scan of her lumbar, thoracic, and cervical spine and brain.  (*Id*. at 376, 378.)  She also had a normal EKG, a normal chest x-ray, a normal CT scan, and tested negative for a number of viruses.  (*Id*. at 4, 413.)

In August of 2019, Plaintiff was diagnosed with fibromyalgia by Richard Neiman, a rheumatologist.  (*Id*. at 5.)  Plaintiff also tested positively for cytomegalovirus (CMV).  (*Id*. at 256.)  As the Ninth Circuit has described:

> Fibromyalgia is a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue. Typical symptoms include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue. What is unusual about the disease is that those suffering from it have muscle strength, sensory functions, and reflexes that are normal. Their joints appear normal, and further musculoskeletal examination indicates no objective joint swelling. Indeed, there is an absence of symptoms that a lay person may ordinarily associate with joint and muscle pain.

*Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017) (internal citations and quotations omitted); *see also Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004).  It is common for patients to visit successive medical specialists prior to being diagnosed with fibromyalgia.  *See Benecke* 379 F.3d at 591 ("[F]ibromyalgia is poorly-understood within much of the medical community, which may explain why [Plaintiff] saw a succession of physicians before being properly diagnosed"); *Revels* 874 F.3d, at 656–57.

By February of 2020, Plaintiff had not worked since June of 2019 and was still experiencing the constellation of chronic pain, weakness, and chronic fatigue symptoms characteristic of fibromyalgia.  (*Id*. at 251.)  *See Benecke* 379 F.3d at 590 ("Common symptoms . . . include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease.").  She reported profound fatigue, weakness, brain fog, and needing to take 1–3 naps per day to her doctors—symptoms that have not improved since.  (*Id*. at 251, 254, 256, 248, 117.)  Her depression—a symptom of bipolar II—also significantly worsened as she became physically ill and stopped working, as did her anxiety.  (Dkt. No. 6-8 at 140, 144, 260.)  In her testimony before the ALJ, Plaintiff described how the chronic pain, weakness, and exhaustion prevents her from lifting things, showering on her own, performing house duties, concentrating, remembering, and following conversations as she once had.  (Dkt. No. 6-1 at 50–54.)  This depiction of her physical and mental state was affirmed by the sworn testimony of Plaintiff's parents, with whom she now lives (Dkt. No. 6-6 at 161–163), psychiatrists (Dkt. No. 6-8 at 240, 260, 358), and an examining nurse practitioner (Dkt. No. 6-8 at 347.)

**B.  Procedural History**

On December 17, 2020, Plaintiff filed applications for disability benefits and supplemental security income, alleging disability onset on June 14, 2019. (*See* Dkt. No. 6-5.) Plaintiffs' applications were denied initially and on reconsideration. (*See* Dkt. No. 6-3; Dkt. No. 6-4.) Plaintiff requested a hearing and appeared before an Administrative Law Judge (ALJ) on July, 2023. (Dkt. No. 6-2 at 18.) On September 25, 2023, the ALJ issued a decision finding Plaintiff not disabled under §§ 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. (*Id*. at 30.) Plaintiff requested review of the decision. On May 23, 2024, the Appeals Council denied the request, at which point the ALJ's decision became the final decision of the Commissioner, (42 U.S.C. § 405(h)), but subject to judicial review, (42 U.S.C. § 405(g)). (*Id*. at 2.) This timely civil action followed: Plaintiff filed a Complaint seeking review of the ALJ's decision on August 6, 2024. (Dkt. No. 1.)

### III        THE ALJ'S DECISION

#### A. The Five Step Evaluation Process

The ALJ follows a five-step evaluation process to assess whether a claimant is disabled. 20 C.F.R. § 404.1520; *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999). First, the ALJ determines whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled, and the claim is denied. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).

If the claimant is not engaged in substantial gainful activity, the ALJ moves to the second step, which requires determining whether the claimant has a "severe" impairment or combination of impairments significantly limiting his or her ability to do basic work activities, and which has lasted or is expected to last for a continuous period of at least 12 months. *Id.*; *see also* 20 C.F.R. § 404.1509 (setting forth the 12-month duration requirement). The Ninth Circuit has repeatedly explained that "claimants need only make a de minimis showing for the analysis to proceed past

1  this [second] step and that properly denying a claim at step two requires an unambiguous record

2  showing only minimal limitations." *Glanden v. Kijakazi*, 86 F.4th 838, 843–44 (9th Cir. 2023).

3  Accordingly, "once a claimant presents evidence of a severe impairment, an ALJ may find an

4  impairment or combination of impairments 'not severe' at step two 'only if the evidence

5  establishes a slight abnormality that has no more than a minimal effect on an individual's ability

6  to work.'" *Id*. at 844 (quoting *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005)). If the

7  claimant has a "severe" impairment or combination of impairments, the third step requires the

8  ALJ to determine whether the impairment or combination of impairments meets or equals an

9  impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P,

10 appendix 1; if so, disability is presumed, and benefits are awarded. *Lounsbury*, 468 F.3d at

11 1114.

12        If the claimant's impairment or combination of impairments does not meet or equal an

13 impairment in the Listing, the ALJ proceeds to the fourth step, which requires the ALJ to

14 determine whether the claimant has sufficient residual functional capacity ("RFC") to perform

15 his or her past work.  *Id*.  An RFC is "an assessment of an individual's ability to do sustained

16 work-related physical and mental activities in a work setting on a regular and continuing basis."

17 SSR 96-9p, 1996 WL 374184, at *1 (July 2, 1996).  It reflects the most a claimant can do despite

18 his or her limitations.  20 C.F.R. § 404.1545(a)(1).  At the RFC assessment phase, the ALJ must

19 consider the claimant's limitations from all impairments, including those that are not severe.  *Id.*

20 at 1049.  "The RFC therefore should be exactly the same regardless of whether certain

21 impairments are considered 'severe' or not."  *Id.* (emphasis omitted). Thus, a claimant cannot be

22 prejudiced by failure to consider a particular impairment severe at step two as long as the ALJ

23 finds the claimant has at least one severe impairment, and still addresses the non-severe

24

impairment when considering the claimant's RFC. *Id.* (citing *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)).

An RFC determination must be based on all of the relevant evidence, including the diagnoses, treatment, observations, and opinions of medical sources, such as treating and examining physicians. 20 C.F.R. § 404.1545. Thus, "the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008)). If the ALJ has applied the proper legal standards and substantial evidence in the record as a whole supports the RFC assessment, the court must uphold the ALJ's assessment. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

At step four, if the ALJ determines a claimant has sufficient RFC to perform past relevant work, then the claimant is not disabled and the claim is denied. *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). The claimant has the burden of proving that he or she is unable to perform past relevant work. *Id.* If the claimant meets this burden, the claimant has established a prima facie case of disability. *Id.*

At step five, the burden shifts to the ALJ to establish that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, considering the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1560(c)(1), (c)(2); *see also* 20 C.F.R. § 404.1520(g)(1). At this stage, the ALJ may "pose to a vocational expert a hypothetical incorporating the residual functional capacity determination ("RFC"); the expert then opines on what kind of work someone with the limitations of the claimant could hypothetically do." *Valentine*, 574 F.3d, at 689.

**B. The ALJ's Decision**

1      In a decision dated September 25, 2023, the ALJ concluded that Plaintiff was not

2   disabled as defined by the Act.  (Dkt. No. 6-2 at 30.)   The ALJ found that Plaintiff had not

3   engaged in substantial gainful activity since June 14, 2019.  (*Id*. at 20.)  At step two, the ALJ

4   concluded that Plaintiff's bipolar disorder was a severe impairment pursuant to 20 CFR

5   404.1520(c) and 416.920(c).  (*Id*. at 19.)  The ALJ did not discuss Plaintiff's fibromyalgia,

6   CMV, or generalized anxiety disorder at step two.  (*Id*.)  At step three, the ALJ found Plaintiff

7   did not have an impairment or combination of impairments that met or medically equaled one of

8   the listed impairments in the Listings.  (*Id*. at 23.)

9      The ALJ next assessed Plaintiff's RFC, and determined that:

10      [T]he Claimant has the residual functional capacity to perform a full range of work at all
       exertional levels but with the certain nonexertional limitations. Specifically, assigned
11      work must be limited to simple, detailed but not complex tasks requiring only the level of
       judgment necessary to make simple work related decisions. The assigned tasks must not
12      require a specific rate of production, such as required by assembly line or hour quota
       work and the tasks must be performed in a routine work environment where there would
13      be only occasional changes in the assigned work setting. While the assigned work may be
       performed in close proximity to other employees, the assigned tasks must be with things
14      and the completion of the tasks must not require collaborative cooperation with others or
       work as a member of a team or crew. Finally, while the assigned tasks may require
15      occasional contact with the coworkers and supervisors and the tasks must require no
       contact with the public.
16
(*Id*. at 24.)  Although the ALJ recognized that Plaintiff's impairments "reasonably might be
17
expected to cause the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective testimony as
18
"not entirely consistent with the medical evidence and other evidence in the record for the
19
reasons explained in this decision."  (*Id*. at 25.)  In considering the medical evidence in
20
Plaintiff's record, the ALJ found the opinion of Dr. David Widlan, Ph.D, partially persuasive, the
21
opinion of Emily Wong, ARNP, unpersuasive, and the opinion of Dr. Connie Craig, Ph.D.,
22
CPPNP, unpersuasive.  (*Id*. at 28.)
23

24

ORDER REMANDING FOR AWARD OF BENEFITS - 7

1      At step four, the ALJ found that Plaintiff would not be able to perform her past work as a

2  neonatal nurse, nurse practitioner, medical records clerk, administrative assistant, or retail

3  salesclerk.  (*Id*. at 29.)  However, the ALJ concluded that she would be competent to perform a

4  significant number of jobs in the national economy, such as a cleaner, garment sorter, or

5  semiconductor bonder.  (*Id*. at 29–30.)  Accordingly, the ALJ made a finding of "not disabled"

6  under the Act.  (*Id*. at 30.)

7      **IV     STANDARD OF REVIEW**

8      When reviewing the Commissioner's final decision under 42 U.S.C. § 405(g), this Court

9  may set aside the denial of social security benefits if the ALJ's findings are based on legal error

10  or are not supported by substantial evidence in the record.  *Bayliss v. Barnhart*, 427 F.3d 1211,

11  1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).  Substantial

12  evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a

13  conclusion."  *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*,

14  305 U.S. 197, 229 (1938)).  The standard requires "more than a mere scintilla" of evidence, "but

15  less than a preponderance."  *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (citation

16  omitted).  The Court "review[s] only the reasons provided by the ALJ in the disability

17  determination and may not affirm the ALJ on a ground upon which he [or she] did not rely."

18  *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).  The Court "must consider the entire

19  record as a whole, weighing both the evidence that supports and the evidence that detracts from

20  the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of

21  supporting evidence."  *Id*. at 1009 (internal quotation marks omitted).

22      "[H]armless error principles apply in the Social Security Act context."  *Molina v. Astrue*,

23  674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

24

1    Generally, an error is harmless if it is not prejudicial to the claimant and is "inconsequential to

2    the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050,

3    1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115.

4                                    **V    DISCUSSION**

5            Plaintiff asserts that the ALJ improperly evaluated Plaintiff's fibromyalgia, CMV, and

6    generalized anxiety disorder and erred in determining that the conditions were not severe.  (Dkt.

7    No. 7 at 1.)  Plaintiff argues that the ALJ erred by "rejecting Plaintiff's allegations of pain and

8    fatigue without clear and convincing reasons for doing so."  (*Id*. at 5, 6) (quoting 80 F.3d 1273,

9    1284 (9th Cir. 1996)).  Plaintiff asserts that the ALJ erred by rejecting Plaintiff's fibromyalgia

10   symptoms because she "based the conclusion on a lack of objective imaging," which is "a legally

11   insufficient reason for rejecting fibromyalgia as non-severe." (*Id*. at 8.)  "[B]enign objective

12   findings by themselves do not constitute a clear and convincing reason for rejecting Plaintiff's

13   subjective testimony on her fibromyalgia symptoms," Plaintiff states.  (Dkt. No. 13 at 2.)  Thus,

14   Plaintiff claims "[t]he ALJ committed harmful legal error here because the RFC states Plaintiff is

15   able to perform a full range of work at all exertional levels and does not consider any physical

16   limitations" despite Plaintiff meeting "all" requirements for establishing fibromyalgia diagnosis.

17   (Dkt. No. 13 at 3.)  Additionally, Plaintiff argues that the ALJ committed harmful legal error by

18   improperly evaluating the medical opinions of Dr. Connie Craig and Emily Wong, ARNP.  (*Id*.

19   at 1, 12.)

20           Defendant responds that "substantial evidence supports the ALJ's decision, and the ALJ's

21   decision is free of harmful legal error."  (Dkt. No. 12 at 9.)  "If, however, the Court were to find

22   harmful error," Defendant continues, "the Court should reject Plaintiff's bare request for a

23   finding of disability and immediate award of benefits" and instead remand for further

24   administrative proceedings.  (*Id*. at 9.)

### A. The ALJ Erred in Discounting Symptom Testimony and Medical Evidence

#### 1. Legal Standard

ALJs must consider every medical opinion in the record and evaluate each opinion's persuasiveness. *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022); 20 C.F.R. § 416.920c(a). Courts rely on a number of factors to evaluate the persuasiveness of a medical opinion: "(1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." *P.H. v. Saul*, 2021 WL 965330, at *3 (N.D. Cal. Mar. 15, 2021) (internal quotations omitted) (quoting 20 C.F.R. §§ 404.1520c(a), (c)(1)–(5), § 416.920c(a), (c)(1)–(5)). Supportability and consistency are the most important considerations. *Woods*, 32 F.4th at 791. Supportability concerns how a medical source supports a medical opinion with relevant evidence, while consistency concerns how a medical opinion is consistent with other evidence from medical and nonmedical sources. *See id.*; 20 C.F.R. § 416.920c(c)(1), (c)(2). "An ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792.

"A physician's opinion of disability 'premised to a large extent upon the claimant's own account of his symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'" *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (quoting *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989)). However, "the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). "Psychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields.

Diagnoses will always depend in part on the patient's self-reports, as well as on the clinical observations of the patient.  But such is the nature of psychiatry."  *Id.*  Thus, professional clinical interviews and mental status examinations are considered "objective measures and cannot be discounted as a 'self-report.'"  *Id.*

As for the evaluation of symptom testimony, the Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited."  *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017).  The ALJ must first determine whether the claimant has presented objective medical evidence of an impairment that "'could reasonably be expected to produce the pain or other symptoms alleged.'"  *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014)).  At this stage, the claimant need only show that the impairment could reasonably have caused some degree of the symptoms; he or she does not have to show that the impairment could reasonably be expected to cause the severity of the symptoms alleged.  *Id.*

If the claimant satisfies the first step, and there is no evidence of malingering, the ALJ may only reject the claimant's testimony "'by offering specific, clear and convincing reasons for doing so.  This is not an easy requirement to meet.'"  *Trevizo*, 871 F.3d at 678 (quoting *Garrison*, 759 F.3d at 1014–15).  As the Ninth Circuit has summarized:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (cleaned up); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009).  Other factors the ALJ

may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

A *lack* of medical evidence is a factor the ALJ may consider in analyzing a claimant's testimony, but it cannot be the sole basis for rejecting it. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005); *Bunnell v. Sullivan,* 947 F.2d 341, 345 (9th Cir. 1991) ("[A]n [ALJ] may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain."). Contrastingly, an ALJ may reject a claimant's symptom testimony when it is directly *contradicted* by the medical evidence. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir.1995)). But the ALJ must explain how the medical evidence contradicts the claimant's testimony by identifying the specific testimony found not credible and explaining which evidence contradicts the testimony. *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020); *see also Treichler v. Comm'r of Soc. Sec. Admin.,* 775 F.3d 1090, 1102–1103 (9th Cir. 2014). Furthermore, the ALJ "cannot simply pick out a few isolated instances" of medical health that support his conclusion, instead the ALJ must consider those instances in the broader context "with an understanding of the patient's overall well-being and the nature of [his] symptoms." *Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016).

Finally, the Ninth Circuit has specifically addressed the treatment of symptom testimony and medical evidence in fibromyalgia cases. *See Revels*, 874 F.3d, 656–662; *Benecke*, 379 F.3d at 590. Because Fibromyalgia was formerly "poorly understood within the medical community," courts were reluctant to recognize it as a disability for Social Security purposes for many years. *Id.* "A sea-change occurred in 2012," when the Social Security Administration (SSA) published

a ruling, SSR 12-2 P, recognizing fibromyalgia as a valid basis for a disability finding and

establishing two sets of diagnostic criteria for diagnosing the condition.  *Id.*  Pursuant to the first

set of criteria, a person suffers from fibromyalgia if: "(1) she has widespread pain that has lasted

at least three months (although the pain may fluctuate in intensity and may not always be

present); (2) she has tenderness in at least eleven of eighteen specified points on her body; and

(3) there is evidence that other disorders are not accounting for the pain."  SSR 12-2P at *2–*3;

*Revels*, 874 F.3d at 656–57.  Pursuant to the second set of criteria, a person suffers from

fibromyalgia if: "(1) she has widespread pain that has lasted at least three months (although the

pain may fluctuate in intensity and may not always be present); (2) she has experienced repeated

manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions,

especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking

unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and (3) there is evidence

that other disorders are not accounting for the pain."  SSR 12-2P at *3; *Revels*, 874 F.3d at 657.

     In *Revels*, the Ninth Circuit held that "[i]n evaluating whether a claimant's residual

functional capacity renders them disabled because of fibromyalgia, the medical evidence must be

construed in light of fibromyalgia's unique symptoms and diagnostic methods, as described in

SSR 12-2P."  *Id.* at 663.  "The failure to do so is error," it established.  *Id.*  Accordingly, an

ALJ's decision to use "objective clinical findings"—such as neurological testing, x-rays, or MRI

scans—to discount fibromyalgia symptom or medical testimony contravenes this circuit's

binding caselaw, which has clearly adopted a specific framework for evaluating and diagnosing

fibromyalgia.  *Id.*  Additionally, under SSR 12-2p and *Revels*, an ALJ is required to "consider the

longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and

wane so that a person may have 'bad days and good days.'"  SSR 12-2P at *8; *Revels*, 874 F.3d

at 657.  The ALJ is also required to account for "[w]idespread pain and other symptoms associated with [fibromyalgia], such as fatigue" at steps four and five in the disability analysis. SSR 12-2P at *6.

### 2.  Symptom Testimony

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms.  (Dkt. No. 6-2 at 24.)  Accordingly, to reject Plaintiff's testimony, the ALJ was required to state "specific, clear and convincing reasons, supported by substantial evidence from the administrative record" for rejecting testimony regarding the intensity, persistence, and limiting effects of her symptoms.  *Austin v. Saul*, 840 F. App'x 899, 901 (9th Cir. 2020) (quoting *Marsh v. Colvin*, 792 F.3d 1170, 1173 n.2 (9th Cir. 2015) (punctuation omitted)).  The ALJ determined that "the Claimant's statements concerning the intensity, persistence and limiting effects of [her physical] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reason explained in this decision."  (Dkt. No. 6-2 at 24.)  This "boilerplate" language is common in ALJ decisions, but has been held legally insufficient, as it fails to identify what parts of a claimant's testimony are not credible and why.  *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020).  The ALJ further provided that she found Plaintiff's statements about the intensity, persistence, and limiting effects of the symptoms inconsistent because the "longitudinal evidence" in the record "does not support the symptoms as alleged.  (*Id*.)  The ALJ concluded that "the record does not support the finding of a physical impairment causing more than minimal impact on the residual functional abilities of the Claimant," because Plaintiff "was examined by many specialists but their examinations and testing results were negative"; "[p]hysical examinations performed by various specialty providers including pulmonology, neurology, infectious disease, and rheumatology

1    have been within normal limits," the ALJ noted.  (*Id*. at 22, 21).  "While . . . there were

2    extensive subjective complaints, the objective examination[s] w[ere] largely unremarkable," the

3    ALJ found.  (*Id*. at 21.)

4          At the outset of its discussion, the Court briefly notes that this case is part of a troubling

5    pattern first identified by the Ninth Circuit in 2017.  *See Revels*, 874 F.3d at 648 (finding that

6    ALJ errors "ar[isisng] from an apparent misunderstanding of fibromyalgia . . . . appear[] to be a

7    recurrent problem") (citing *Weiskopf v. Berryhill*, No. 15-16008, 693 Fed. Appx. 539, 541–42

8    (9th Cir. 2017); *Hamilton-Carneal v. Colvin*, 670 Fed. Appx. 613, 613 (9th Cir. 2016); *Payan v.*

9    *Colvin*, 672 Fed. Appx. 732, 732 (9th Cir. 2016); *Benecke*, 379 F.3d at 594)).  That this

10   "recurrent problem" has continued unabated for seven years since *Revels* is alarming, given the

11   clear legal standard *Revels* established.  *See, e.g.*, *C.B. v. O'Malley*, No. 22-CV-05579-LJC, 2024

12   WL 1329920, *4 (N.D. Cal. Mar. 27, 2024) (ALJ's reasons for rejecting fibromyalgia symptom

13   complaints do not meet clear and convincing standard); *Giron v. O'Malley*, No. 1:24-CV-00541-

14   SKO, 2024 WL 4754192, *7 (E.D. Cal. Nov. 12, 2024) ("the ALJ failed to properly analyze

15   Plaintiff's symptoms considering the realities of her fibromyalgia"); *Denise M. v. O'Malley*, No.

16   3:23-CV-00155-SLG, 2024 WL 3159485, *8 (D. Alaska June 25, 2024) ("in light of the unique

17   symptoms and diagnostic methods of fibromyalgia and CRPS, it was error for the ALJ to

18   discount Plaintiff's symptom complaints because her allegations were out of proportion to her

19   imaging and because her physical examinations showing normal strength and range of motion");

20   *Kim v. O'Malley*, No. 23-CV-00321-DKW-RT, 2024 WL 414423, *4 (D. Haw. Feb. 5, 2024)

21   ("this fixation on the lack of objective medical evidence, while perhaps appropriate in certain

22   contexts, was improper in light of the principle that an ALJ may not discredit a claimant's

23   subjective fibromyalgia symptom testimony on the basis of normal examination results"); *Thai v.*

24

1    *Kijakazi*, No. 23-CV-639-BLM, 2023 WL 8719460, *8 (S.D. Cal. Dec. 18, 2023), *aff'd sub nom.*

2    *Thai v. Colvin*, No. 24-329, 2024 WL 5001823 (9th Cir. Dec. 6, 2024) ("the ALJ failed to

3    consider Plaintiff's fibromyalgia symptoms and failed to address the required SSR 12-2P criteria

4    despite significant evidence of fibromyalgia-related symptoms and fibromyalgia diagnoses over

5    an extended period of time. These failures are legal errors rendering the ALJ's decision flawed");

6    *Neilah S.L. v. Kijakazi*, No. EDCV 22-0612-AS, 2023 WL 6194296 (C.D. Cal. May 4, 2023)

7    ("The ALJ's sole reliance on objective medical evidence is especially problematic here due to

8    Plaintiff's fibromyalgia"); *Timpone v. Kijakazi*, No. 18-55155, 2022 WL 1599128 (9th Cir. 2022)

9    (that a claimant's physical disability is more limiting than indicated by objective testing "is not a

10   specific and legitimate reason to discount a treating physician's opinion in a case involving

11   fibromyalgia"); *Truong v. Berryhill*, 774 F. App'x 381, 383 (9th Cir. 2019) (ALJ's failure to

12   consider both SSR 12-2P criteria is "legal error warranting setting aside the denial of Social

13   Security Benefits").

14          Much like the caselaw cited *supra*, the ALJ's analysis of Plaintiff's testimony was flawed

15   because she failed to evaluate Plaintiff's fibromyalgia under controlling Ninth Circuit precedent

16   and SSR 12-2P.  *See Revels*, 874 F.3d at 657.  Indeed, the ALJ did not cite SSR 12-2P once.

17   (*See generally* Dkt. No. 6-2 at 18–30.)

18          As an initial matter, the record establishes that Plaintiff suffers from fibromyalgia:

19   indeed, Plaintiff meets *both* definitions outlined in SRR 12-2P.  She has a history of widespread

20   physical pain.  (Dkt. No. 6-7 at 4, 352, 363, 370, 373, 376; Dkt. No. 6-7 at 11, 13, 17, 22–30.)

21   She has consistently suffered from fatigue, cognitive and memory problems, muscle pain, muscle

22   weakness, shortness of breath, headache, and dizziness, amongst other symptoms.  (Dkt. No. 6-7

23   at 4, 78, 92, 110, 137, 352, 363, 370, 373, 376.)  There is medical documentation of at least 11

24

1    positive tender points on physical examination—indeed, there is documentation by multiple

2    medical professionals across multiple years.  (Dkt. No. 6-7 at 4–5; Dkt. No 6-8 at 346.)  There is

3    ample evidence that other disorders that could cause these repeated manifestations are not the

4    cause.  (See Dkt. No. 6-7 at 137) (medical professional noting that Plaintiff had seen

5    neurologists, cardiologists, rheumatologists, and infectious disease experts in search of an

6    etiology of her symptoms.)  And Plaintiff was diagnosed by a rheumatologist.  (Dkt. No. 6-7 at

7    5.)  A "rheumatologist's specialized knowledge is 'particularly important with respect to a

8    disease such as fibromyalgia that is poorly understood within much of the medical community.'"

9    *Revels*, 874 F.3d at 664 (quoting *Benecke*, 379 F.3d at 594 n.4).

10    Yet the ALJ failed to evaluate fibromyalgia properly pursuant to SSR 12-2P/*Revels* at

11    steps two, four, and five.  *See Revels*, 874 F.3d at 662 ("In evaluating whether a claimant's

12    residual functional capacity renders them disabled because of fibromyalgia, the medical evidence

13    must be construed in light of fibromyalgia's unique symptoms and diagnostic methods, as

14    described in SSR 12-2P and *Benecke* [379 F.3d 587].  The failure to do so is error[.]").  Although

15    the ALJ stated that "[t]here is evidence of reports of pain at 14 of 18 fibromyalgia tender points

16    upon examination and limited neck range of motion," and documented "extensive complaints of

17    shortness of breath, lightheadedness, exhaustion, malaise, weakness, headache, nausea, stiff

18    muscles, difficulty thinking, bladder leakage, and blurred vision," the ALJ concluded that "the

19    findings upon physical examination were otherwise unremarkable," indicating that Plaintiff was

20    not physically disabled.  (Dkt. No. 6-2 at 22.)  Yet the caselaw is clear: benign examination

21    results do not undermine Plaintiff's testimony about the extent of her fatigue, weakness,

22    headache, blurry vision, constant pain, limited mobility, difficulty concentrating and

23    remembering, and difficulty lifting, climbing, walking, bending, and standing for a prolonged

24

1    period of time.  (Dkt. No. 6-6 at 28.)  *See Revels*, 874 F.3d at 656, 666–67; *see also Tina M. v.*

2    *Comm'r of Soc. Sec.*, 418 F. Supp. 3d 614, 619 (W.D. Wash. 2019) ("[T]he fact that Plaintiff had

3    normal muscle strength does not contradict Plaintiff's testimony that she suffers from fatigue and

4    pain due to fibromyalgia").  As another court recently put it, "[g]iven the unique nature of

5    fibromyalgia, the ALJ cannot reject a claimant's symptom testimony based on a lack of objective

6    findings—such as normal x-ray and MRI results and examinations showing normal muscle

7    strength, tone, stability, gait, and range of motion—because such results 'are perfectly consistent

8    with debilitating fibromyalgia.'"  *Neilah*, 2023 WL 6194296, at *7 (citing *Revels*, 874 F.3d at

9    666).  On the contrary, the evidence in the record *supports* Plaintiff's testimony; Plaintiff's

10   medical records show that she has consistently complained of a classic fibromyalgia presentation

11   since 2019.  (Dkt. No. 6-7 at 4, 78, 92, 110, 137, 352, 363, 370, 373, 376.)  Yet instead of

12   evaluating this evidence in line with SSR 12-2P/*Revels*, the ALJ improperly discounted the

13   extent of Plaintiff's pain, weakness, and fatigue by relying on medical results that courts have

14   repeatedly stated do not contradict a finding of disability in the fibromyalgia context.  *See, e.g.,*

15   *Smith v. Saul*, 820 F. App'x 582, 584 (9th Cir. 2020) ("the fact that Smith retained 'full range of

16   motion' and 'muscle tone' and showed little 'objective evidence' of dysfunction is not a valid

17   reason for discounting her symptom testimony"); *Berryhill*, 774 F. App'x, at 383; *Revels*, 874 F.

18   3d at 662.  These failures constitute legal error.

19        Additionally, the ALJ also appeared to discount Plaintiff's testimony by suggesting that it

20   was contradicted by her mother's third-party function report.  (Dkt. No. 6-2 at 24) ("The

21   Claimant's mother provided a third-party function report, which did not describe the degree of

22   limitation alleged by the Claimant in her Adult Function Report.").  Yet a review of both

23   Plaintiff and her mother's testimony shows the opposite: Plaintiff's mother's account matches

24

that of Plaintiff in all material respects.  Plaintiff's mother states that Plaintiff requires 14-16 hours of sleep a day and two naps minimum, finds it difficult to sit upright for over an hour due to pain, experiences pain in various major joints, making it difficult to walk more than a block, and suffers from problems with information recall and retention.  (Dkt. No. 6-6 at 161.) Plaintiff's mother corroborates Plaintiff's evaluation of her capacity to do household chores, stating that "she needs help with self-care, changing sheets, and emotional support" and "is unable to contribute to the housekeeping or outside chores."  (*Id.*)  "ALJs are not allowed to selectively focus on comments that suggest non-disability but ignore other parts of the record to the contrary."  *David Eric S. v. Colvin*, No. 3:23-CV-2288-GPC-AHG, 2025 WL 227719, *9 (S.D. Cal. Jan. 17, 2025).  Here, the ALJ's selective focus on some of the comments Plaintiff's mother made constitutes cherry picking the record and fails under law.

Finally, the ALJ's decision provides no guidance as to which of plaintiff's disabling symptoms she believed are undermined by which aspects of the record; the ALJ failed to link the evidence that purportedly contradicts testimony to the testimony itself.  This leaves the Court to speculate, which it cannot do.  *See Brown–Hunter v. Colvin,* 806 F.3d 487, 489, 494–495 (9th Cir. 2015) ("We cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting [claimant]'s pain testimony where, as here, the ALJ never identified which testimony she found not credible, and never explained which evidence contradicted that testimony . . . . In sum, we cannot substitute our conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions.").

3.   Medical Opinion Analysis

As for Plaintiff's second argument, the Court agrees with Plaintiff that the ALJ committed harmful legal error by improperly evaluating the medical opinions of Dr. Connie Craig and Emily Wong.

Plaintiff has been under the care of Dr. Craig, a clinical psychologist and psychiatric nurse practitioner, since 2010. (Dkt. No. 6-8 at 260.) The administrative record contains records of Dr. Craig's treatment of Plaintiff between 2019 and 2021, including notes from professional clinical interviews. (Dkt. No. 6-8 at 140–147; 260–61.) In 2019, Dr. Craig documented Plaintiff's lack of energy, muscle weakness, dizziness, and difficulty driving. (*Id*. at 144.) In 2020, Dr. Craig documented Plaintiff's depression, fatigue, weakness, anxiety, dizziness, memory difficulties, concentration difficulties, brain fog, and disorientation and developed a treatment plan. (*Id*. at 141.) In 2021, Dr. Craig found that Plaintiff was suffering from shortness of breath, dizziness in all positions, low heart rate, extreme fatigue, muscle weakness that impacted balance and walking, foggy thinking, disorientation, cognitive slowness and processing issues, general inflammation, and ongoing muscle and joint pain. (*Id*. at 260.) Dr. Craig stated that "[m]ost days it is a struggle [for Plaintiff] to do simple activities of daily living: getting up, showering, changing her sheets, basic tasks of living are beyond her physical and mental abilities." (*Id*.) Dr. Craig specifically noted that Plaintiff's decline was a marked contrast to her life prior to June of 2019, affirming that prior to her disability onset she "lived independently and managed all aspects of her personal and financial life successfully." (*Id*.) Dr. Craig stated that Plaintiff could be expected to miss more than four days of work per month and would be up to 95% off task during an average eight-hour workday. (*Id*. at 397.)

The ALJ found Dr. Craig's opinion unpersuasive. The ALJ explained her determination with the statement: "this opinion is . . . heavily based on subjective reporting of the Claimant and is not supported by, or consistent with the largely benign physical and mental health findings

throughout the record." (Dkt. No. 6-2 at 28.) This does not constitute "an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792. The Ninth Circuit has clearly stated that the professional opinions of psychiatrists based on clinic observations of a patient are considered "objective measures and cannot be discounted as a 'self-report.'" *Id*. "[T]he rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *Buck*, 869 F.3d at 1049. Moreover, the ALJ did not point to which physical and mental health findings throughout the record supported her determination that Dr. Craig's opinion was unpersuasive, thereby failing to explain how she considered the consistency factors in assessing the persuasiveness of the opinion. *See* 20 C.F.R. §416.920c(b)(2). Accordingly, the ALJ's reason for discounting Dr. Craig's medical opinion is not supported by substantial evidence.

Nurse Wong examined Plaintiff in May of 2022. (Dkt. No. 6-8 at 341.) Nurse Wong documented tenderness over "all 18 FMS tender points." (*Id*. at 343.) She found that Plaintiff was "visibly exhausted." (*Id*. at 346.) Based on her assessment of Plaintiff's performance on the medical exam and the medical records she received, Nurse Wong determined that Plaintiff would be able to stand and walk ten minutes at one time and up to 70 minutes total during an eight-hour day; sit 15 minutes at one time, and up to 120 minutes an eight-hour workday; occasionally lift and carry ten pounds, but never carry 25 pounds; and occasionally push and pull with all extremities. (*Id*. at 347.) The ALJ determined that Nurse Wong's opinion was unpersuasive because "[t]his opinion is based heavily upon the subjective complaints as reported by the Claimant and is not supported by the extensive but benign workup by many specialists, as well as the generally normal physical examination performed by Nurse Wong." (Dkt. No. 6-2 at 28.) As with Plaintiff's testimony, Nurse Wong's medical opinion regarding Plaintiff's ability stand, walk, and must be "construed in light of fibromyalgia's unique symptoms and diagnostic methods, as described in SSR 12-2P." *Revels,*

874 F.3d at 663.  The ALJ failed to do so, which is "legal error warranting setting aside the denial of social security benefits."  *Truong*, 774 Fed. App'x at 383.  The ALJ also stated that Dr. Wong's opinion was not supported by her treatment notes; yet, as discussed *supra*, Plaintiff's "normal physical examination" does not undermine Dr. Wong's finding of tenderness at all 18 fibromyalgia tender points nor does it compromise her evaluation of Plaintiff's ability to walk, sit, or stand within the context of her fibromyalgia diagnosis and presentation.

Accordingly, the ALJ erred by rejecting Plaintiff's testimony about her fibromyalgia without providing clear and convincing reasons and by determining that the medical opinions of Dr. Craig and Nurse Wong were unpersuasive without providing an explanation supported by substantial evidence.  These errors were not harmless, as they impacted the RFC formulated by the ALJ.  *Carmickle v. Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008).  If Plaintiff's testimony and the opinions of Dr. Craig and Nurse Wong had been credited, the ALJ could not have concluded Plaintiff was able to work.  Because the Court has found that the ALJ committed harmful error by failing to evaluate Plaintiff's testimony in light of fibromyalgia's unique symptoms and diagnostic methods, it is not necessary to reach Plaintiff's additional arguments about CMV and anxiety disorder.

## B.  The Appropriate Remedy

Plaintiff asks the Court to remand this matter for an immediate award of benefits.  (Dkt. No. 7 at 18.)  The Ninth Circuit has established a three-step framework for deciding whether a case may be remanded for an award of benefits.  *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017.  First, the Court must determine whether the ALJ has failed to provide legally sufficient reasons for rejecting evidence.  *Id*. (citing *Garrison*, 759 F.3d at 1020).  Second, the Court must determine "whether the record has been fully developed, whether there are outstanding issues

1    that must be resolved before a determination of disability can be made, and whether further

2    administrative proceedings would be useful." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d

3    1090, 1101 (9th Cir. 2014) (internal citations and quotation marks omitted).  If the first two steps

4    are satisfied, the Court must determine whether, "if the improperly discredited evidence were

5    credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*,

6    759 F.3d at 1020.  "Even if [the Court] reach[es] the third step and credits [the improperly

7    rejected evidence] as true, it is within the court's discretion either to make a direct award of

8    benefits or to remand for further proceedings." *Leon*, 880 F.3d at 1045 (citing *Treichler*, 775

9    F.3d at 1101).

10          The first factor weights in favor of remand for benefits, as the ALJ failed to provide

11   legally sufficient reasons for rejecting both Plaintiff's testimony and the medical opinions in the

12   record.  *See supra.*  As for the second factor, the record is well developed, as it includes medical

13   records from treating providers, numerous physical and mental examinations, and three third-

14   party function reports that support Plaintiff's testimony about her limitations.  Thus, the second

15   factor also weighs in favor of a remand for benefits.  Finally, the third factor weighs in favor of

16   remand for benefits, because if Plaintiff's testimony concerning the limits of her disabilities had

17   been credited and if Dr. Craig and Nurse Wong's opinions had been given weight, the ALJ could

18   not have issued an RFC finding that plaintiff is able to work full time in the national economy.

19   Indeed, the vocational expert testified that if Plaintiff's limitations were as she testified, Plaintiff

20   would not be able to retain *any* work.  (Dkt. No. 6-2 at 71–72) (opining that somebody who

21   needs to recline on the job for at least an hour or two most days cannot obtain work; somebody

22   who can be expected to miss one to two days of work per week cannot retain work).  Plaintiff's

23

24

1  testimony, the third-party function reports of her parents, Dr. Craig's testimony, and Nurse

2  Wong's testimony all support this conclusion.

3          Ultimately, the requirement to construe medical evidence in light of fibromyalgia's

4  unique symptoms and diagnostic methods, as outlined in SSR 12-2P, has been standard in the

5  Ninth Circuit for almost a decade.  *See Revels*, 874 F.3d at 663.  The ALJ's failure to follow this

6  clear and simple directive—including by failing to reference SSR 12-P *at all* at steps two, four,

7  and five—warrants reversal and not remand.  In this particular circumstance, remanding "would

8  create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication."

9  *Benecke*, 379 F.3d at 595.  As in *Benecke*, "the record, including the limited vocational expert

10  testimony, clearly establishes that [Plaintiff] cannot perform a sedentary job or any other

11  substantial gainful work that exists in the national economy."  *Id.*

12                          **VI      CONCLUSION**

13          For the reasons described herein, this case is REVERSED and REMANDED for the

14  calculation and award of benefits.

15

16          Dated this 10th day of March, 2025.

17

18

19                              David G. Estudillo
                                United States District Judge

20

21

22

23

24